Selma Savit, Administratrix of Estate of Julius Savit, Deceased, Plaintiff Appellee, v. Chicago Title and Trust Company, Trustee et al., Defendants. Theodore J. Ticktin, Appellant.

Gen. No. 43,206.

Opinion filed February 14, 1946. Rehearing denied February 26, 1946. Released for publication February 26, 1946 as an abstract; released for publication as a reported case September 3, 1946.

HERMAN & POLLACK, for appellant; EDWARD M. HERMAN and B. L. POLLACK, of counsel.

SHULMAN, SHULMAN & ABRAMS, for plaintiff appellee; MEYER ABRAMS, of counsel.

WARREN B. BUCKLEY, HAROLD L. REEVE and EDMUND J. REYNOLDS, for certain appellee.

KIRKLAND, FLEMING, GREEN, MARTIN & ELLIS, for certain other appellees; WALTER C. SENNE and JOHN M. O'CONNOR, JR., of counsel.

MR. JUSTICE SCANLAN delivered the opinion of the court.

After foreclosure proceedings and in accordance with a reorganization agreement, the property commonly known as 5000 Cornell avenue, Chicago, Illinois, was conveyed to the Chicago Title and Trust Company, as Trustee under a liquidation trust agreement dated June 1, 1935. Defendants Aldis J. Browne, John R. Magill and Charles H. Ehrlich are Trust Managers under the agreement. Selma Savit, as administratrix of the estate of her husband, holds certificates of beneficial interest in the trust. On April 27, 1944, two of the Trust Managers, Browne and Ehrlich, Magill being ill, accepted an offer of Theodore J. Ticktin, defendant, to purchase the property for the sum of $471,000, subject to certain commissions. On the same day but shortly before the acceptance the instant complaint was filed. Prior to the acceptance the Trustee was notified that the complaint would be filed. After the acceptance the Trust Managers notified Ticktin to deposit the balance of the purchase price by May 8, 1944, but he did not deposit said balance at any time thereafter. The purpose of plaintiff's complaint was to prevent the sale of the premises to Ticktin.

After the pleadings had been settled the chancellor, Judge MINER, after hearing evidence entered, on June 2, 1944, a decretal order, which contains the following:

"1. That this court has jurisdiction of all of the parties hereto and of the subject matter.

"2. That the premises involved herein are located at 5000 Cornell Avenue, Chicago, Illinois, and consist of a lot fronting 100 feet on said Cornell Avenue and

having a depth of 106 feet 4½ inches, improved with a 21-story and basement brick building, approximately fifteen years old, containing 38 5-room apartments, 38 6-room apartments, one 5-room janitor's apartment and a bungalow apartment of nine rooms, appraised by the Appraisal Committee of the Chicago Real Estate Board as of March 29, 1944 at a fair market value of $438,000.00. Said property is held in trust by Chicago Title and Trust Company, as Trustee, under a liquidation trust agreement dated June 1, 1935, and known as Trust No. 30993, of which the defendants Aldis J. Browne, John R. Magill and Charles H. Ehrlich are the Trust Managers.

"3. That the object of the trust is the sale, liquidation of the trust property and the distribution of the net proceeds thereof to the beneficiaries, who are numerous and widely scattered. The trust agreement vests in the Trustee, Chicago Title and Trust Company, full power to grant options, to contract to sell, and to sell and convey the trust property, provided that prior to the termination of the trust the Trustee shall not sell or convey unless not less than twenty days prior to such sale the Trustee shall mail to the beneficiaries notice of the receipt of an offer to purchase, and unless the holders of less than 50% of the units outstanding shall lodge with the Trustee written objections to such proposed sale. The trust agreement further provides that the Trustee shall not contract to sell or convey the trust property, except upon the written direction of the trust managers, but the Trust Managers have no power to contract to sell, sell or convey the trust property, this power being vested solely in the Trustee.

"4. That prior to April 4, 1944 the Trust Managers received several offers from prospective purchasers and that the highest offer was made by the defendant, Theodore J. Ticktin, who offered $443,000.00 in cash for the said premises, which offer was $5000.00 more

than the appraised fair market value of the property; that the offer of Ticktin was in writing and was subject to the payment of a broker's commission at the Chicago Real Estate Board rate amounting to approximately $14,290.00. The brokerage commission was to be split equally between Ross, Browne and Fleming, of which firm the defendant, Aldis J. Browne, was a member, and the broker representing the purchaser. The beneficial interest in the trust is divided into two classes of units, one known as Series 'A' and one known as Series 'B', and the above offer would amount to approximately $48.00 on each of the Series 'A' units, and approximately $2.60 on each of the Series 'B' units outstanding. The sum of $22.35 per unit of beneficial interest had been theretofore distributed to the beneficiaries.

"5. There was a provision in an instrument attached to the offer but not made a part thereof, that the Trust Managers had the right to receive higher offers for a period of twenty-one days from the date the notice of the offer was mailed to the certificate-holders; that said instrument further provided if higher bids would be obtained by the Trust Managers, then the said Theodore J. Ticktin would have the privilege of meeting such higher bids within three days after the expiration of the time for the beneficiaries to dissent from such sale. The Trustee was not advised of the giving of the foregoing option to said Ticktin, nor was it advised of the division of the commission.

"6. On April 4, 1944, at the direction of the Trust Managers, Aldis J. Browne, John R. Magill and Charles H. Ehrlich, The Chicago Title and Trust Company, as Trustee, mailed to all beneficiaries, otherwise known as certificate-holders, a letter prepared by the Trust Managers bearing said last-mentioned date, notifying them of the Ticktin offer of $443,000.00 cash, subject to a broker's commission, as aforesaid, and containing considerable other pertinent information.

The notice was silent on the right of said Ticktin to meet the higher bid within the three day period and on the division of the commission, nor was the name of the brokerage firm, of which one of the Trust Managers was a member, disclosed.

"7. Upon the expiration of the aforesaid twenty-day period the holders of certificates of beneficial interest representing less than 50% of the units outstanding, lodged with the Trustee objection to said offer, which information the Trustee, thereupon, communicated to the Trust Managers. The Trust Managers, within said twenty-one day period, received higher offers, the highest being $471,000.00; that the Trust Managers notified said Ticktin within the three-day period, that the highest bid which they had received was $471,000.00, out of which there was to be paid the brokerage commission and thereupon, the said Ticktin met said bid, offering to pay $471,000.00 in cash, subject to the payment of the brokerage commission as aforesaid. The Trust Managers purported to accept the said bid of Ticktin about one-half hour after the filing of the complaint herein, and to sell the premises to him. Plaintiff offered in her complaint to guarantee a net bid of $465,000.00 and to make good this offer, her attorneys deposited with the Trustee; pursuant to the order of the court, the sum of $15,000.00.

"8. The beneficiaries, by their failure to object to the sale, have approved a sale at less than the guaranteed bid of the plaintiff and the property might bring more at a sale to be held in open court, with no possible loss to the beneficiaries, but with benefits to them in that they will participate in the proceeds realized from a higher bid.

"9. Under the terms of the Trust Agreement, the Trust Managers could only direct the Trustee to accept an offer made to it, and they had no power to contract for the sale of the premises or to sell the

premises and they had no power to accept any offer and consequently, the purported acceptance of the offer of Ticktin did not result in a binding contract and the contract should, therefore, be canceled and set aside and removed as a cloud on the title to the property.

"10. The property should be sold to the highest and best bidder for cash at not less than the guaranteed bid, at a sale to be held in open court at such time as this court shall fix, subject to the right of the court to adjourn the sale from time to time, in its discretion and subject to its approval.

"11. That the plaintiff herein is the owner of certificates of beneficial interest for units of both Series 'A' and Series 'B' hereinabove mentioned, and her interests as such certificate-holder are not adverse to, nor inconsistent with, the rights of all other certificate-holders not otherwise herein represented, who exceed 500 in number and are widely scattered throughout the United States, so that it is impossible to bring them all before this court; that the plaintiff's interest as a holder of certificates as aforesaid are the same as and identical with those of the other holders of certificates of beneficial interest under said trust, and that their interests are represented by the plaintiff herein; that it is not necessary that the other beneficiaries who are not otherwise herein represented be made defendants hereto, their interests being fully represented by the plaintiff, and by the Chicago Title and Trust Company, as Trustee.

"12. That no fraud was committed in the solicitation of the bids and the acts performed by any of the parties, but due to the fact that the acts of the Trust Managers were controlled by the majority and the acceptance of the bid was only by two of the Trust Managers, one of whom was a member of the brokerage firm which participated in the commissions, the court cannot sanction acts involving discretion where

a Trust Manager might have been influenced by the commissions which were to go to his firm, and irrespective of the good motives of any of the parties, the law does not sanction such acts.''

The decree orders and decrees that the purported contract between defendant Ticktin and the Trust Managers for the sale of the property in question ''is null and void and is hereby canceled and set aside as a cloud on the title of the Chicago Title and Trust Company, as Trustee of the 5000 Cornell Liquidation Trust''; that the sale of the premises shall be held in open court, on June 16, 1944, at eleven o'clock in the forenoon. The decree then recites the terms upon which the sale shall be made. The decree further recites:

''IV. That the sale of the said Trust property, as hereinabove described, shall be made in the following manner:

''Bids for the hereinbefore described Trust property will be received in open court, on June 16, 1944 at 11:00 o'clock in the forenoon, until the highest and best bid is made therefor. After the highest and best bid for the said Trust property is ascertained from among the bidders whose bids are then made in open court, opportunity will be allowed to Theodore J. Ticktin forthwith to meet the highest and best bid so made. If he does so forthwith meet such highest and best bid so made, any further bids to be made must exceed by at least $2500.00 the said bids of said Theodore J. Ticktin. If no further bids are made, exceeding by at least $2500.00 the bid of said Theodore J. Ticktin, the court will direct the Trustee to sell the said Trust property to him. If further bids are made, exceeding by at least $2500.00 the bid of the said Theodore J. Ticktin, the bidding will be reopened and the highest and best bid then again ascertained. Theodore J. Ticktin will again be allowed forthwith to meet the highest and best offer then made, and,

further, opportunity will thereupon be allowed other offerors to reopen the bidding by the making of an increased bid exceeding the highest bid of Theodore J. Ticktin by at least $2500.00. This process shall continue until Theodore J. Ticktin fails to meet the highest and best bid made, or until other offerors fail to increase by at least $2500.00 the last bid of Theodore J. Ticktin.''

Plaintiff contends that the record shows that paragraph four was incorporated in the decree because the chancellor assumed from the attitude of the parties that if Ticktin was given the privilege stated in the paragraph the decree would amount to a consent decree. Counsel for Ticktin contends that there was no such understanding and that the decree was not entered by consent of Ticktin.

Ticktin is the only appellant. The Title & Trust Company, Trustee, has filed a brief in which it contends that the Trustee had the exclusive power to sell the property and that the chancellor correctly held that the Ticktin contract was null and void. While the Trust Managers did not appeal from the decretal order, they have filed a short brief in which they state that ''in the trial court these defendants interposed a defense based upon the proposition that they had in all respects acted honestly and in good faith and in accordance with the terms and provisions of the Trust Agreement, and therefore, the court is without jurisdiction in the matter,'' and they adopt the brief and argument filed by Ticktin. On June 6, 1944, Ticktin filed his notice of appeal from the decree of June 2, 1944, and served notice of the appeal upon all parties. It appears from the record that on June 7, 1944, the chancellor entered a decree that is, in all respects, like the decree of June 2, 1944, save that it omits paragraph four of the decree of June 2, 1944, that gave Ticktin the privilege to meet higher bids at the court sale. Ticktin did not appeal from the order

of June 7 but he asks us to pass upon that order upon this appeal and to reverse it. Ticktin perfected his appeal from the order of June 2, 1944, on June 6, 1944, and that appeal does not bring up for review the order entered June 7, 1944. Ticktin suggests that if we hold that we cannot consider the order of June 7 upon this appeal that we allow him to file in this court and in this proceeding a notice of appeal from the order of June 7, and he states that such an appeal would be "within the purview of Section 76 of the Civil Practice Act." The Practice Act does not give us the power to grant such an appeal.

From the briefs filed by plaintiff and Ticktin and the numerous motions and counter-motions made by them in this court, it would appear, at first blush, that a number of complex questions were presented by this appeal, but when one keeps in mind that Ticktin, alone, appeals from the decree, the appeal, in our judgment, presents no difficult questions. Counsel for the Trustee, in a model brief of three or four pages, have shown very clearly that the only question necessary for us to decide is, Was there a valid and binding contract of sale entered into between the Trust Managers and Ticktin involving the premises described in the trust agreement. The Trustee and plaintiff contend that the trust agreement vests the power of sale in the Trustee and not in the Trust Managers. The chancellor found that "Under the terms of the Trust Agreement, the Trust Managers could only direct the Trustee to accept an offer made to it, and they had no power to contract for the sale of the premises or to sell the premises and they had no power to accept any offer and consequently, the purported acceptance of the offer of Ticktin did not result in a binding contract and the contract should, therefore, be canceled and set aside and removed as a cloud on the title to the property." As defendant states, "the Trust Agreement is the charter of the powers of the Trustee and

Trust Managers.'' The following are the pertinent provisions in the trust agreement that apply to the question before us:

The party of the first part ''have caused to be transferred and conveyed, to the party of the second part as Trustee, the property set forth and described in the schedule of property hereto attached and made a part hereof, for the purpose of the *sale* and liquidation thereof, and the distribution of the proceeds,

. . . .

''Subject to the provisions of Article IX hereof, the Trustee shall have full power to perfect and secure its right, title or interest to the Trust Property or any portion thereof . . . and shall hold all of the Trust Property in trust, to *sell* and convert the same into cash or other personal property, and to distribute the net proceeds . . . . And said Trustee shall have *full power* to grant options to purchase, *to contract to sell* and *to sell* the Trust Property and any part or parts thereof on any terms, including a sale or transfer of the Trust Property . . . ; *to sell, contract to sell,* lease and sublease, assign, dispose of, . . . and provided further that the Trustee shall not prior to the termination of this trust *sell or otherwise dispose of* all or substantially all of the Trust Property unless not less than twenty days prior to such sale

. . . .

''*No purchaser,* contractee, lessee, sub-lessee, assignee or mortgagee of any of said Trust Property from the Trustee and no person *dealing with the Trustee,* shall be required to see to the application of the rents, purchase money, or moneys borrowed or advanced on said premises or property, or be obliged to see that the terms of this trust have been complied with, or be obliged to inquire into the necessity or expediency of any act of the Trustee, or to inquire into the power and authority of the Trustee.'' (Italics ours.)

Upon the termination of the trust and at the time and place of sale ''all of said Trust Property shall be *sold by the Trustee as a whole or in parcels at public or private sale or sales as the Trustee shall determine;* and upon any such sale or sales the Trustee shall have the power to transfer and convey . . . .'' (Italics ours.)

The agreement further provides:

''The Trust Managers shall keep books containing a description of all property from time to time constituting the Trust Property hereunder, and an account of all receipts and disbursements. All of the business of this trust, except as herein otherwise specifically provided, shall be managed and transacted, and all of the powers and duties of the Trustee shall be directed and controlled by the Trust Managers, it being expressly understood, however, that the Trust Managers shall have no title, legal or equitable, to the Trust Property, and shall in no event be deemed to be co-trustees of the Trust Property with the Trustee. The Trust Managers shall collect all income, issues and profits of the Trust Property, shall pay therefrom all costs and expenses of the operation and management of the Trust Property, and shall pay over the net rentals after the payment of costs and expenses of operation and management, to the Trustee to be held and distributed by the Trustee as herein provided.''

After a careful consideration of the above provisions of the trust agreement we are satisfied that the chancellor was justified in his finding in the decree that ''Under the terms of the Trust Agreement, the Trust Managers . . . had no power to contract for the sale of the premises or to sell the premises and they had no power to accept any offer and consequently, the purported acceptance of the offer of Ticktin did not result in a binding contract and the contract should, therefore, be canceled and set aside and removed as a cloud on the title to the property.'' The

chancellor, in our judgment, erred in finding that the Trust Managers, under the trust agreement, could *direct* the Trustee to accept an offer made to them. However, the Trust Managers did not direct the Trustee to accept the offer made by Ticktin and accepted by them, and the position of Ticktin is that the Trust Managers, with the approval of the beneficiaries, had the power, under the trust agreement, to enter into a valid agreement with Ticktin for the sale of the property "which [agreement] the Trustee was bound to perform." The interest of Ticktin in the instant proceeding ends if the agreement of sale was not a binding contract that the Trustee, under the trust agreement, was obliged to carry out. Counsel for Ticktin seek to confuse the real question before us by arguments like the following: "A court of equity will not interfere with the discretionary powers of fiduciaries in the absence of proof that they acted unreasonably or in bad faith"; that "a court of equity will never interfere before or after sale except in cases of actual fraud or collusion"; that "it is not the function of a court of equity to direct trustees except upon application to the court by the trustee," principles of law that have no application to the question before us.

Plaintiff strenuously contends that, entirely aside from the point that the Trust Managers were without power under the terms of the trust agreement to enter into the contract of sale, there are other good grounds that would warrant the voiding of the contract, but, in our view of this appeal, it is not necessary for us to pass upon the said grounds. However, as to one of the grounds urged, we feel impelled to say that as a majority of the Trust Managers controlled their actions and as the acceptance of Ticktin's offer was signed by only two of the Managers, one of whom was a member of a brokerage firm that would participate in the brokerage commission of $15,000 provided for in Ticktin's offer, the propriety of the act of that

member in signing the acceptance—indeed, the binding effect of the act—may well be questioned. We may add that the record tends to show that the acceptance of Ticktin's offer was unduly hastened by the knowledge that plaintiff had filed or was about to file her complaint. It is due the Trustee to say that in its brief it states that it "is opposed to the acceptance of offers on liquidation trust sales where a Trust Manager participates in the broker's commission or where any offeror is given the right to meet higher bids."

■ Defendant Ticktin contends that the court erred in denying his motion to dismiss the complaint and supplemental amendment thereto. On May 18, 1944, the chancellor entered an order denying Ticktin's motion to dismiss the complaint save as to paragraph seven, which paragraph was dismissed, and in the same order, upon motion of Ticktin's attorney, the latter was granted leave to answer the complaint, and on May 22, 1944, upon motion of his attorney, Ticktin was granted leave to adopt the answer of the Trust Managers as his answer. The notice of appeal in this cause states that Ticktin "hereby appeals from the final decree entered in this cause on June 2, 1944," and the prayer is that the decree be reversed, vacated and set aside. The chancellor, in the decree, did not pass upon the sufficiency of the complaint, and the instant contention is plainly an afterthought. However, assuming that Ticktin has the right to raise the instant contention, we hold that the complaint and the amendment thereto were certainly not so fatally defective that they would not support that part of the decretal order that pertains to the contract in question. After judgment the rule by which pleadings before judgment are construed most strongly against the pleader is reversed and the pleading upon which the judgment is based is liberally construed for the purpose of sustaining the judgment, and if the plead-

ing states a cause of action, however defectively or imperfectly, and the issue joined requires proof of the fact defectively stated, the pleading is sufficient to sustain the judgment although it may have been demurrable. (*Smith v. Rutledge*, 332 Ill. 150.)

It is clear that the chancellor erred in including in the decree paragraph four. That he quickly realized his error appears from the decretal order entered on June 7, 1944. Plaintiff has filed a motion for leave to confess error as to that paragraph. Defendant Ticktin states that "the provisions in the decree [paragraph four] for Ticktin to bid at a court sale conferred no benefit upon him. This very appeal taken within four days after the entry of this decree, and his assignments of error attacking the whole of said decree rejects any conclusion of an acceptance of such purported benefit." In view of the position of the parties there is no good reason why that part of the decree of June 2, 1944, should not be reversed.

The decree of the Circuit court of Cook county of June 2, 1944, with the exception of paragraph four of the decree, is affirmed. Paragraph four of the decree will be reversed.

*Decree of June 2, 1944, affirmed in part and reversed in part.*

FRIEND, P. J., and SULLIVAN, J., concur.