Argued and submitted April 19, reversed on appeal; affirmed on cross-appeal September 29, reconsideration denied November 10, petition for review dismissed December 12, 1982 (294 Or 295)

PACIFIC REALTY TRUST et al,
*Respondents, Cross-Appellants,*

*v.*

APC INVESTMENTS, INC. et al,
*Appellants, Cross-Respondents,*

(A8111-06903, CA A23427)

651 P2d 163

S. Thomas Pollack, Los Angeles, California, argued the cause for appellants, cross-respondents. With him on the briefs were Kenneth R. Heitz, Gregory R. Smith, and Irell & Manella, Los Angeles; Roland F. Banks, Jr., Mildred J. Carmack, and Schwabe; Williamson, Wyatt, Moore & Roberts, Portland.

Barnes H. Ellis, Portland, argued the cause for respondents, cross-appellants. With him on the briefs were Gregory R. Mowe, Laurel S. Terry, and Stoel, Rives, Boley, Fraser and Wyse, Portland.

Before Joseph, Chief Judge, and Warren and Rossman, Judges.

JOSEPH, C. J.

## JOSEPH, C. J.

The decisive issue in this case is whether the trustees of Pacific Realty Trust (PacTrust) could lawfully adopt a bylaw restricting the transferability of trust shares in a way different from and more stringent than that expressly provided by the trust declaration.

PacTrust, an Oregon business trust, was formed in 1972 as a publicly traded real estate investment trust (REIT) as defined by IRC § 856. So long as such a trust remains qualified as an REIT, its income distributed to its shareholders is tax deductible by the trust. In order to qualify, the trust must distribute at least 95 percent of its taxable income each year. Seventy-five percent of its assets must be real estate, and 75 percent of its income must derive from real estate. It also must have a minimum of 100 shareholders.

Two other Internal Revenue Code requirements for maintaining REIT status are material to this appeal. First, the ownership of an REIT must be represented by transferable shares or transferable certificates of beneficial interest. IRC § 856(a)(2). Second, during the last half of a tax year, five or fewer people may not own more than 50 percent of the value of the outstanding shares. IRC §§ 856(a)(6), 542(a)(2).

On November 2, 1981, APC Investments, Inc., a Delaware corporation (APCI), commenced a tender offer to acquire up to 454,000 shares of beneficial interest in PacTrust. On November 8, 1981, PacTrust's board of trustees met to discuss the effect of the tender offer. They were advised that the percentage of concentrated ownership directly or indirectly in the hands of five or fewer individuals following the acquisition would be approximately 55 percent, thus threatening PacTrust's REIT status. In order to assure that five or fewer shareholders would not acquire more than 50 percent in value of PacTrust's shares, the board unanimously adopted new bylaw Article IX to limit the number of shares that any person can acquire, directly or indirectly, to 9.8 percent of the outstanding shares.[1] The

---

[1] Section 9.2 of Article IX provides:

next day, PacTrust and two representative shareholders filed an action to enjoin APCI's acquisition of shares in excess of 9.8 percent. The action also sought to have declared valid section 6.17 of the Declaration of Trust, which authorizes the trustees to redeem or to refuse to transfer shares in order to protect PacTrust's REIT status. In its tender offer, APCI had reserved the right to challenge section 6.17.[2]

APCI filed a counterclaim to enjoin enforcement of bylaw Article IX. The parties' cross-motions for preliminary injunctions were heard on November 18, 19 and 23, 1981. By stipulation, all the evidence received at the preliminary injunction was made applicable to the trial on the merits, which was held December 18, 1981.

The trial court declared bylaw Article IX valid but refused to enjoin APCI from proceeding with its offer, because the judge found it "not a simple matter to enjoin," he knew "little of what is involved in this particular tender," he was reluctant to assume "a continuing responsibility in determining what parties involved in the transaction can and cannot do in the future," and he believed courts were better equipped to "look backwards" and award damages than to "figure out what you can do in the future."[3]

---

"*Limit.* No Person may own a number of the Trust's Shares in excess of 9.8 percent of the total outstanding Shares. For the purpose of this Article IX, a Person shall be deemed to own all Shares owned for purposes of IRC §§ 542(a)(2) and 544 and all Shares which would be owned directly or indirectly by such Person upon the conversion of Convertible Securities. Any Shares deemed owned by a Person because of the possible conversion of Convertible Securities shall be treated as 'outstanding Shares' when this Section 9.2 is applied to such Person."

For purposes of Article IX, "Person" includes a corporation.

[2] In its tender offer, APCI stated that:

"* * * [R]egardless of whether the company continues to meet such rules for qualification as a REIT, the Purchaser nevertheless may seek to cause the Company to terminate its REIT status following the completing of the offer."

It also stated:

"* * * [I]t is the Purchaser's current belief that it will propose a merger or similar combination of the Company with the Purchaser or APC [which owns 51 percent of APCI] or an affiliate of either of them."

[3] PacTrust also sought to enjoin the offer in the federal District Court for Oregon under the provisions of the Williams Act 15 USC § 78aa. At the time of the conclusion of the state court trial, the federal court had issued a preliminary

APCI appeals the trial court's declaration that bylaw Article IX is valid. PacTrust cross-appeals, seeking a reversal of the trial court's refusal to enjoin APCI's tender offer.

■ APCI first argues that the trustees, in adopting the new bylaw, exceeded the authority granted them by the Declaration of Trust. It is the general rule that the powers of the trustees of a business trust are measured and limited by the provisions of the declaration of trust. *See, e.g., Savit v. Chicago Title & Trust Co.,* 329 Ill App 277, 68 NE2d 472 (1946).

PacTrust maintains that the "obvious and most direct source of authority" for adoption of bylaw Article IX comes from section 2.6 of the Declaration of Trust, which states:

"A Majority of the Trustees may adopt and from time to time amend or repeal by-laws for the conduct of the business of the Trust, its rights or powers, and the rights or powers of the Shareholders, Trustees, Officers, employees, agents and representatives."

PacTrust also points to section 3.27 of the Declaration as a source of its authority:

"The Trustees shall have power to do all such things and execute all such instruments as they deem necessary, proper or desirable in order to carry out, promote or advance the purposes of this Trust although such matters or things are not herein specifically mentioned. Any determination of the purposes of the Trust, or of the existence of any power or authority hereunder, made by the Trustees in good faith, shall be conclusive. In construing the provisions of this Declaration of Trust, the presumption shall be in favor of the grant of power to the Trustees."

PacTrust argues that, because the trial court found that the trustees had acted in good faith in adopting bylaw Article IX in order to preserve the trust's REIT status (and that is not contested by APCI) and because the express and essential purpose of the trust is to qualify as an REIT, the bylaw is valid.

---

injunction against APCI and, on January 8, 1982, it entered a final injunction against APCI. That case was decided by the Ninth Circuit Court of Appeals on August 27, 1982. The case has no bearing on this one.

Section 6.17 of the Declaration states, in relevant part:

> "If the Trustees shall, at any time and in good faith, be of the opinion that direct or indirect ownership of Securities of the Trust has or may become concentrated to an extent which would disqualify the Trust as a Real Estate Investment Trust, then the Trustees shall have the power by lot or other means deemed equitable to them (i) to call for redemption a number, or principal amount, of Securities of the Trust sufficient, in the opinion of the Trustees, to maintain or bring the direct or indirect ownership of Securities of the Trust into conformity with the requirements for such qualification, and (ii) to refuse to transfer or issue Securities of the Trust to any Person whose acquisition of the Securities of the Trust in question would in the opinion of the Trustees result in such disqualification."

The trial court found, and the parties agree, that bylaw Article IX is more restrictive than section 6.17. Indeed, the bylaw prohibits the transfer of shares where REIT status is not threatened.[4] PacTrust argues, however, that the bylaw is a permissible implementation of section 6.17. As APCI points out, that section authorizes the trustees to restrict the transfer of shares only in specified situations — that is, only when a specific transfer would jeopardize PacTrust's REIT status. Section 6.17 allows the trustees to refuse to transfer those shares "in question" which would, in the opinion of the trustees, result in REIT disqualification.

---

[4] The President of PacTrust, Peter Bechen, admitted at trial that bylaw Article IX exceeds what is necessary to protect REIT status. That he was correct is made clear by the following example given by APCI:

"Assume that the five largest individual shareholders of PacTrust own in the aggregate 30. of the outstanding shares, with A owning 9., B owning 8., C owning 6., D owning 4., and E owing 3.. A purchases an additional 2. of the outstanding shares. Under Section 6.17, the trustees are not empowered to affect that transfer, because they cannot in good faith conclude that it would disqualify the trust as a REIT. Under the Internal Revenue Code, to maintain REIT status, the five largest individual shareholders cannot own more than 50.; in this example, the resulting 32. that would be owned by the five largest shareholders after A's purchase is clearly less than 50., and thus, in the words of Section 6.17, the purchase would not 'disqualify the Trust as a Real Estate Investment Trust.'

"However, under bylaw Article 9, the trustees would declare null and void the purchase of 1.2.of the 2. of outstanding shares that were the subject of the transaction, since A could not own more than 9.8. of the outstanding shares, even where there is no threat to REIT status."

Notwithstanding section 6.17's language that the trustees "shall have the power by lot or other means deemed equitable to them" to refuse to transfer shares when a transfer would cause PacTrust to lose its REIT status, a blanket limitation on the number of shares a person may own when REIT status is not jeopardized is not authorized by, nor an implementation of, section 6.17.[5]

PacTrust also argues that section 3.27, *supra,* empowers the trustees to take any action they deem necessary to preserve REIT status and that their determination of the power to act, if made in good faith, is conclusive. However, if that is so, the limitations and powers in the Declaration of Trust become irrelevant to any actions taken by the trustees, so long as they act in good faith. Moreover, section 3.27 is a catch-all clause at the end of a section setting forth the specific powers of the trustees and providing that the trustees may take certain actions to promote the purposes of the trust, even though the actions are not specifically mentioned in the Declaration. If the authority to act *is* specifically mentioned elsewhere (as in section 6.17), the trustees need not look to section 3.27 for authority.

PacTrust also maintains that the trustees reasonably concluded that section 6.17 was not adequate to ensure protection of REIT status without Article IX. However, if the trustees had reasonably concluded that section 6.17 did not safeguard the trust's REIT status, the trustees' appropriate action would have been to amend the Declaration rather than to adopt a bylaw. Section 10.5 of the Declaration states, in part, that:

---

[5] APCI argues that the new bylaw may itself threaten PacTrust's REIT status. IRC § 856(a)(2) requires that REIT ownership be represented by "transferable shares." Treas. Reg. § 1.856-1(d)(a) provides, in part:

> *"Beneficial ownership.* Beneficial ownership shall be evidenced by transferable shares, or by transferable certificates of beneficial interest * * *. Provisions in the trust instrument or corporate charter or bylaws which permit the trustees or directors to redeem shares or to refuse to transfer shares in any case where the trustees or directors, in good faith, believe that a failure to redeem shares or that a transfer of shares would result in the loss of status as a real estate investment trust will not render the shares 'nontransferable'."

Because the new bylaw absolutely prohibits the transfer of shares, even where REIT status is not threatened, it is at least arguable that PacTrust's shares would no longer be sufficiently transferable under the above provision.

"[I]f the Trustees shall determine, with the advice of counsel, that any provision of the Trust is in conflict with the REIT Provisions of the Internal Revenue Code * * * such provision shall be deemed void and without any force or effect * * * and the Trustees, by the vote of two-thirds of the Trustees, and without the vote or written consent of Shareholders, shall promptly amend the Declaration of Trust to conform to the REIT Provisions of the Internal Revenue Code."

APCI next claims that Article IX is inconsistent with sections 6.3 and 6.7 of the Declaration. Under Oregon law, a business trust is subject to the laws regulating corporations. ORS 128.580. ORS 57.141 states, in part:

"The bylaws may contain any provision for the regulation and management of the affairs of the corporation not inconsistent with law or the articles of incorporation."

*See also State ex rel Brewster v. Ostrander,* 212 Or 177, 318 P2d 284 (1957).

Article 6 of the Declaration sets out the rights of the shareholders with respect to their shares and the powers of the trustees to affect those rights. Section 6.3 provides, in part:

*"In furtherance of the provisions of Section 6.17,* each certificate evidencing Shares shall contain a legend * * * to the following effect, or such other legend as the Trustees may from time to time adopt:

*"Provisions Relating to Redemption and Prohibition of Transfer of Shares*
[Emphasis in original.]

*"If necessary to effect compliance by the Trust with certain requirements of the Internal Revenue Code,* the shares represented by this certificate are subject to redemption by the Trustees of the Trust and the transfer thereof may be prohibited upon the terms and conditions set forth in the Declaration." (Emphasis supplied.)

Section 6.7 provides in part:

"Shares *shall be transferable* on the records of the Trust * * * by the record holder thereof * * * upon delivery to the Trustees * * *." (Emphasis supplied.)

These sections indicate that shares will be freely transferable upon delivery, subject only to the limitations set forth

in section 6.17. Because bylaw Article IX's limitation on the number of shares that may be transferred goes beyond that contained in section 6.17, it is not "in furtherance of the provisions of section 6.17" and contravenes section 6.3.

■     We conclude that, not only is bylaw Article IX not authorized by, it contravenes the Declaration of Trust. After that conclusion, we need not address APCI's other assignments of error, nor do we need read the cross-appeal.

Reversed on the appeal; affirmed on the cross-appeal.