Argued and submitted October 7, 1985, affirmed April 9, petitions on attorneys fees
denied by opinion August 20, 1986
See 80 Or App 789 (1986)

SABRE FARMS, INC.,
*Appellant,*

*v.*

JORDAN et al,
*Respondents.*

(A8203-01935; CA A30113)

717 P2d 156

Donald H. Mullins, Seattle, Washington, argued the cause for appellant. With him on the briefs were Judith B. Stouder, Martha J. Dawson, and Schweppe, Krug & Tausend, P.S., Seattle, Washington, and John S. Ransom and Ransom, Blackman & Simson, Portland.

Don G. Carter, Portland; Milo Petranovich, Portland; Roger K. Stroup, Portland; Jack L. Kennedy, Portland; and I. Franklin Hunsaker, Portland, argued the cause for respondents. With them on the brief were Donald W. McEwen, and McEwen, Gisvold, Rankin & Stewart, Portland; Spears, Lubersky, Campbell, Bledsoe, Anderson & Young, Portland; E. Richard Bodyfelt and Bodyfelt, Mount, Stroup & Chamberlain, Portland; Susan E. Watts and Kennedy, King & Zimmer, Portland; W.Eugene Hallman and Mautz, Hallman & Heicher, Pendleton; and Thomas A. Gordon, Danford E. Lloyd Bickmore, and Bullivant, Houser, Bailey, Hanna, Pendergrass, Hoffman, O'Connell & Goyak, Portland.

Before Gillette, Presiding Judge Pro Tempore, and Joseph, Chief Judge, and Van Hoomissen, Judge.

JOSEPH, C. J.

## JOSEPH, C. J.

Plaintiff (Sabre) was created in 1973 by three Montana ranchers who envisioned the conversion of eastern Oregon desert land into productive farmland with irrigation from the Columbia River. Sabre's primary cash crop was potatoes. At the relevant times, H.C. Jordan was chairman of Sabre's board and its treasurer. Pitsch was controller from April, 1977, to May, 1980, and became assistant secretary in August, 1978. Reid was president from March, 1977, until May, 1980, and Davidson was secretary and corporate counsel. The other defendants are all alleged to have been involved to a greater or lesser extent in the activities giving rise to the claims.

Plaintiff makes two fundamental claims. The first is that Jordan and Reid breached their fiduciary duty to Sabre and usurped a corporate opportunity when they purchased Oregon Potato, Inc. (OPI), another large potato farming operation. Plaintiff also claims that Reid and Pitsch usurped a corporate opportunity for a lease of a potato storage shed and that, through various outside ventures, they breached their fiduciary duties by self-dealing. Plaintiff claims that the other defendants breached their fiduciary duties by aiding and abetting the officers' usurpation of Sabre's corporate opportunities.

After a trial to the court, all of plaintiff's claims against each defendant were dismissed with prejudice in part on account of plaintiff's laches, and a judgment was entered. The court also entered judgment in favor of Jordan, Reid, Pitsch and Davidson on their counterclaims for indemnification of attorney fees and expenses for their defense.

We will only summarize the facts which led to this litigation. On March 20, 1978, Jordan announced to Sabre's board of directors that OPI was interested in selling its land, potato storage space and potato processing and flake plants. He said that he and Davidson had talked to OPI's president about the sale as individuals and not as representatives of Sabre. Muir, a director, also said that he had met with the OPI president concerning the same matter. Jordan explained that, if the circumstances were to develop favorably, the matter would be presented to the board for consideration. On October 12, 1978, Jordan and Reid disclosed to the board that they had

entered into a memorandum of intent to purchase OPI. The full terms of the agreement were not disclosed at that time, because Jordan and Reed said they had agreed with the president of OPI to keep them confidential. Jordan did explain that they did not intend to grow potatoes on OPI land in 1979 and instead planned to develop an industrial facility to lease to a new french fry processor. Those plans were presented as representing a benefit to Sabre, because they would reduce competition and provide a new market for potatoes.

The board specifically discussed whether the acquisition was a corporate opportunity for Sabre and whether Jordan and Reid had a conflict of interest between their OPI plans and their duties to Sabre. After a discussion, the disinterested directors voted unanimously that Sabre was not interested in investing in OPI, that the acquisition was not a corporate opportunity, that Jordan and Reid could continue with the acquisition on their own behalves and that the board believed that the officers' involvement in OPI would not prejudice Sabre's operations. (The purchase would remove 8,000 irrigated acres from the real estate market at a time when Sabre was negotiating the sale of its own operations because of its very serious financial problems.) Jordan and Reid's acquisition of OPI closed on January 29, 1979.

Sabre's board meeting minutes for March 30, 1979, the next meeting, indicate that Jordan explained in substantial detail the investment that he and Reid had made in OPI and that the board took no further action. The board members also had available to them a written explanation of the terms and conditions of the transaction. At that meeting considerable attention was given to questioning Reid about his leasing, for himself, a potato storage shed owned by OPI and about various transactions which later led to the self-dealing claims. Reid explained in response that Sabre was committed to a lease of another storage shed, so he did not believe that he was interfering with a Sabre opportunity. He also discussed some of the transactions between others of his outside ventures and Sabre and explained that he thought they were fair to both parties. The board was sufficiently concerned at the time to order further investigation of the transactions. A report by Sabre auditors detailed every transaction and concluded that they had resulted in no financial harm to the corporation. The report was presented to the board in June, 1979, and the Board

took no further action.

■     Plaintiff contends that the trial court, having determined that plaintiff's claims are primarily equitable, erred in ruling that the claims of usurpation of its corporate opportunities are barred by laches and the two-year Statute of Limitations, which is applicable by analogy "as a yardstick." *Albino and Albino,* 279 Or 537, 553, 568 P2d 1344 (1977). The trial court concluded that the limitation in ORS 12.110(1)[1] applies to Sabre's usurpation claims, that Sabre had full knowledge of all material facts by March 30, 1979, at the latest, and that more than two years passed between the acquisition of that knowledge and the filing of this action. Plaintiff argues that the six-year Statute of Limitations[2] should apply, because of the supposed contractual nature of defendants' obligations. Plaintiff relies on federal cases that predate Oregon's relevant case law.

In *Securities-Intermountain v. Sunset Fuel,* 289 Or 243, 258, 611 P2d 1158 (1980), the Supreme Court noted:

> "Given the need under ORS 12.080 and 12.110 to characterize an action commenced after two years as either contractual or noncontractual, *Dowell v. Mossberg* [226 Or 173, 355 P2d 624, 359 P2d 541 (1961)] and its sequels were concerned to forestall the transformation of actions based on liability independent of any specific agreement into actions for breach of contract for the sole purpose of circumventing the two-year limitation of ORS 12.110."

The court further explained:

> "If the alleged contract merely incorporates by reference or by implication a general standard of skill and care to which

---

[1] ORS 12.110(1) provides:

"An action for assault, battery, false imprisonment, or for any injury to the person or rights of another, not arising on contract, and not especially enumerated in this chapter, shall be commenced within two years; provided, that in an action at law based upon fraud or deceit, the limitation shall be deemed to commence only from the discovery of the fraud or deceit."

[2] ORS 12.080(1) provides in part:

"(1) An action upon a contract or liability, express or implied, excepting those mentioned in ORS 12.070 and 12.110 and except as otherwise provided in ORS 72.7250;

"* * * * *

"shall be commenced within six years."

the defendant would be bound independent of the contract, and the alleged breach would also be a breach of this non-contractual duty, then ORS 12.110 applies." 289 Or at 259.

In this case, plaintiff claims that all of the defendants breached their fiduciary duties by usurpation of alleged corporate opportunities and by self-dealing. Those duties are binding by reason of the relationships between the parties, independently of contract. Therefore, under *Securities-Intermountain,* the two-year limitation would apply. Moreover, the claims here do not involve a direct physical injury to personal property which could make ORS 12.080(4) applicable. *U.S. Nat'l Bank v. Davies,* 274 Or 663, 665, 548 P2d 966 (1976).

■    Plaintiff argues that, even if the two-year limitation applies, the action was timely brought, because the period does not begin to run until full disclosure occurs. The Supreme Court stated in *U.S. National Bank v. Davies, supra,* 274 Or at 666, a legal malpractice case, that the limitation period begins to run when the cause of action accrues. However, a plaintiff need not know every fact necessary to win on the claim but only enough, actually or impliedly, to make it aware of every element of the cause of action. *Duncan v. Augter,* 62 Or App 250, 255, 661 P2d 83, *rev den* 295 Or 122 (1983).

■    The primary claim, usurpation of a corporate opportunity, from which the breach of fiduciary duty claims also arise, is defined in *Klinicki v. Lundgren,* 298 Or 662, 695 P2d 906 (1985). A director or executive usurps a corporate opportunity if he takes advantage of an economic opportunity without first offering the opportunity to the corporation, disclosing all the material facts and obtaining a rejection by a majority of the disinterested directors (or shareholders). 298 Or at 681-83. Sabre's cause of action accrued when the facts indicated that a business opportunity had been taken by officers or directors, that the opportunity might not have been fairly offered to Sabre, that all material facts had not been disclosed and that the disinterested directors had not rejected the opportunity with full knowledge.

■    In March, 1978, Jordan told the board that OPI was interested in selling, and another director also stated that he had talked to OPI about that interest in selling. At the October, 1978, board meeting, Sabre's disinterested directors

voted to reject the OPI transaction as a corporate opportunity, even though Jordan and Reid had refused to disclose all of the terms of the OPI purchase. Plaintiff argues that it did not then have enough information about the transaction to realize that a corporate opportunity existed or was usurped. We disagree. As we said in *Duncan v. Augter, supra,* a plaintiff need not know *every* fact. The disinterested directors knew enough, actually or impliedly, to recognize the opportunity, if it was one, and to determine both whether it was one the corporation should and could attempt to take advantage of and whether Jordan and Reid were acting improperly. Therefore, the limitation period could be held to have begun to run on October 12, 1978. Plaintiff filed its action on January 5, 1982, more than a year after two years had passed.[3]

In any event, by March 30, 1979, Sabre knew of Reid's leasing of the storage shed, which it claims was also a corporate opportunity, and it also had notice of all of the important circumstances leading to all of the claims eventually made. Even though the board ordered further investigation of some of those transactions, which was completed by June, 1979, it had enough knowledge in March to impose liability or to stop self-dealing activities had it chosen to act. If Sabre was ever harmed, that harm had at least begun and was known or knowable. The limitation period on those claims, therefore, began to run then and ended more than nine months before plaintiff filed its actions and two months before the bankruptcy.

Once we have held, as we do, that the two-year limitation applies, we then have to determine whether plaintiff carried its burden of pleading and proving that "laches does not exist." *Albino v. Albino, supra,* 279 Or at 553. Our examination of the humongous pleading files has not disclosed *any* laches pleading by plaintiff but, even assuming that it was properly raised (and the parties certainly did fight over it), we find nothing in the record that would warrant a conclusion that plaintiff has any equitable excuse for failing to sue timely. The trial court did not err on the limitations issue.

---

[3] Plaintiff argues that the filing for bankruptcy on May 4, 1981, tolled the limitation period. 11 USC § 108(a). In this case, the limitation period ended before the bankruptcy filing occurred, so the period was not extended by the filing.

Plaintiff also assigns as error the trial court's judgment for Jordan, Reid, Pitsch and Davidson on their counterclaims for indemnification. We review cases in equity *de novo*; but when the evidence conflicts or several inferences may be drawn from the record, we tend to give weight to the findings of the trial court. *Evans v. Korman,* 264 Or 145, 148, 504 P2d 110 (1972); *see also Mortgage Mint Corp. v. Morgan,* 76 Or App 174, 177, 708 P2d 1177 (1985).

Sabre's articles of incorporation and its bylaws both contain provisions providing for indemnification.[4] However, the provisions differ about the conditions for indemnification.[5] The articles provide for indemnification for reasonable

---

[4] Plaintiff argues that Montana's statute only allows indemnification if the officer or director acted in his official capacity. That argument is an inaccurate statement of the Montana statute. *See* Mont Code Ann § 35-1-414(2)(a)(B).

[5] The Articles of Incorporation provide:

"C. This corporation shall indemnify every director, officer or employee, whether or not then in office or employed, and every director, officer or employee (whether or not then in office or employed) of each other corporation in which this corporation owns a majority of the shares of stock entitled to vote for election of directors of such corporation, his heirs, executors or administrators, against reasonable expenses, including counsel fees, and fines and penalties (including the cost of reasonable settlements made with a view to curtailment of cost of litigation, exclusive of any amount paid to this corporation or any such other corporation in settlement) *incurred in connection with any civil, criminal or administrative action, suit or proceedings in which he is made a party,* or threatened to be made a party, *by reason of the fact that he,* or his testator or intestate, *is or was a director, officer or employee of this corporation,* or such other corporation, whether or not he, or his testator or intestate, is or was a director, officer or employee at the time of incurring such expenses, except in relation to matters as to which he, or his testator or intestate, shall be finally adjudged in such civil, criminal or administrative action, suit or proceedings to be liable for negligence or misconduct in the performance of his duties as such director, officer or employee; and in the event of a settlement, indemnification shall be provided only in connection with such matters covered by the settlement as to which this corporation is advised by counsel that the person to be indemnified, or his testator or intestate, has not, in any substantial way, been derelict in the performance of his duties as charged in such civil, criminal or administrative action, suit or proceedings. The foregoing right of indemnification shall not be exclusive of other rights to which any person so indemnified may be entitled." (Emphasis supplied.)

The By-Laws provide:

"Indemnification of Directors and Officers - Every director and officer shall be indemnified by the corporation against all civil and criminal liabilities *incurred in relation to his corporate duties,* including reasonable costs of defense and reasonable settlement amounts, *except where such resulted from substantial*

expenses, including attorney fees, whenever an officer or director is made a party to an action as a result of being an officer, director or employe and so long as the officer, director or employe has not been adjudged to be liable. The bylaws, on the other hand, provide for indemnification of directors and officers against liabilities incurred in relation to their corporate duties, including reasonable costs of defense, except when those costs result from a substantial dereliction in the performance of their duties.

■ ■　Plaintiff completely ignores the provision in the articles and simply argues that the bylaws require that an officer or director must have acted properly in relation to his corporate duties to warrant indemnification. A bylaw of a corporation may not conflict with the articles of incorporation and, if a conflict exists, the bylaw is void. Mont Code Ann § 35-1-214; *see State ex rel Brewster v. Ostrander,* 212 Or 177, 187-88, 318 P2d 284 (1957); *see also Pacific Realty v. APC Investments,* 59 Or App 425, 432, 651 P2d 163 (1982). The bylaws conflict with the articles in at least two respects. The bylaws only allow indemnification of directors and officers, but the articles allow indemnification of directors, officers *and* employes. The bylaws allow indemnification if the actions of the officers were in relation to their corporate duties, whereas the articles allow indemnification if a director or officer is made a party to an action as a result of being an officer, director or employe. In addition, the bylaws place a condition on indemnification that the expenses must not have resulted from a substantial dereliction in the performance of duties; the articles allow indemnification unless the director, officer or employe has been found liable. Because the provision for indemnity in the bylaws conflicts with the application of and conditions for indemnification under the articles, the bylaw does not control. Jordan, Reid, Pitsch and Davidson were officers, directors or employes of Sabre and are entitled to indemnification for reasonable expenses and attorney fees, because the claims would not have been brought against them if they had not been.

■　Plaintiff next contends that the trial court erred in

---

*dereliction in the performance of his duties by such officer or director.* The corporation shall have authority to secure insurance to cover its indemnification liability and to pay the premiums therefor." (Emphasis supplied.)

awarding attorney fees and costs to Jordan, Reid and Pitsch: (a) for pursuing third-party claims for indemnity and contribution against Sabre's present board; (b) for attorney fees actually paid by Oregon Potato Company, the successor to OPI; (c) for multiple representation by counsel; and (d) for expert witness fees for services provided by Jon Wheeler, a co-defendant in this action.

Plaintiff argues that defendants should not recover attorney fees and costs for their third-party claims against other members of the Sabre board, because indemnity is only allowed for defense of claims, not for prosecution of claims. The relevant language from the articles of incorporation states that indemnity is proper for expenses "incurred in connection with any civil action * * * in which [the officer or director] is made a party * * *." The trial court concluded that the third-party claims were a legitimate matter of defense strategy in response to plaintiff's claims. We agree with the trial court under the facts, because the third-party claims were directly related to the liability asserted against defendants Jordan, Reid and Pitsch.

We also reject plaintiff's remaining arguments about attorney fees. The private arrangement defendants made with Oregon Potato Company for the payment of their attorney fees in this case is irrelevant to the question of indemnification. Plaintiff inaccurately categorizes the fees paid to Wheeler as expert witness fees. Rather, they were for professional services in preparation for trial and were legitimate defense expenses. Finally, in regard to the attorney fees for multiple representation, the trial court considered arguments and affidavits allocating attorney fees among the defendants entitled to and those not entitled to indemnification. The court specifically found that defendants' allocation was reasonable and sound and deducted the amount allocated to non-allowable fees from the recovery for attorney fees. We have no reason to alter that determination.

Affirmed.