# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

No. 03-6023NI

_____

|  |  |  |
|---|---|---|
| In re: | * | |
| | * | |
| Internet Navigator, Inc., | * | |
| | * | |
| Debtor. | * | |
| | * | |
| | * | |
| On-Line Services Ltd., L.L.C., | * | |
| | * | Appeal from the United States |
| Objector - Appellant, | * | Bankruptcy Court for the |
| | * | Northern District of Iowa |
| v. | * | |
| | * | |
| Bradley & Riley PC, | * | |
| | * | |
| Claimant - Appellee. | * | |

\_\_\_\_\_

Submitted: October 1, 2003
Filed: November 6, 2003

\_\_\_\_\_

Before KRESSEL, Chief Judge, MAHONEY, and VENTERS, Bankruptcy Judges.

\_\_\_\_\_

VENTERS, Bankruptcy Judge.

This is an appeal from the order of the bankruptcy court[1] dated April 22, 2003, which held that a claim for attorney's fees filed by Bradley and Riley ("B&R"), incurred defending state court litigation between the former shareholders of the Debtor, Internet Navigator, Inc. ("INI"), were payable under the Debtor's confirmed reorganization plan. For the reasons stated below, we affirm.

## I. STANDARD OF REVIEW

"Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed. R. Bankr. P. 8013. Findings of fact are reviewed for clear error, and legal conclusions are reviewed *de novo*. *Blackwell v. Lurie (In re Popkin & Stern)*, 223 F.3d 764, 765 (8th Cir. 2000); *Official Committee of Unsecured Creditors v. Farmland Industries, Inc.*, 296 B.R. 188, 192 (B.A.P. 8th Cir. 2003). Matters committed to the bankruptcy court's discretion will be reversed only if the court has abused its discretion. *C.T. Development Corp. v. Barnes (In re Oxford Development, Ltd.)*, 67 F.3d 683, 685 (8th Cir. 1995); *City of Sioux City, Iowa v. Midland Marina, Inc. (In re Midland Marina, Inc.)*, 259 B.R. 683, 686 (B.A.P. 8th Cir. 2001).

## II. BACKGROUND

INI was formed in 1994 and began offering local internet service in September 1995. By 1999, shares of INI were held by six individuals: Bennett (45,000), Letsche (30,000), Elbert (30,000), Glick (37,000), Lohff (29,500), and Walden (7,500). In early 1997, Bennett, in his capacity as president, hired the law firm of B&R as INI's corporate counsel. On November 3, 1998, three of the shareholders – Glick, Lohff,

---

[1] The Honorable Paul J. Kilburg, Chief Judge, United States Bankruptcy Court for the Northern District of Iowa.

and Walden – sued INI, Bennett, Letsche, and Elbert in Linn County, Iowa, District Court in their capacities as officers and directors alleging, *inter alia*, breach of fiduciary duty, fraud, and misrepresentation ("Suit 1"). As remedies, the plaintiffs sought dissolution of the corporation monetary and damages. Bennett, who had previously retained B&R for general corporate matters, also retained B&R to represent INI and each individual defendant in Suit 1. On November 9, 1998, B&R sent a conflict of interest disclosure/waiver statement to INI, Bennett, Letsche, and Elbert.[2] The parties were able to settle most of the disputed matters, and on January 14, 1999, the parties entered into mutual releases whereby the individual defendants and INI did not incur any liability, and the case proceeded under Iowa Code § 490.1330, *et seq*., as a shareholder valuation suit. Paragraph six of the mutual releases provided that the agreement would be void in the event INI filed bankruptcy.

Despite the mutual releases, Glick, Lohff, and Walden – on behalf of all of INI's shareholders – filed a second suit in the state court on February 18, 1999, against INI, Bennett, Letsche, and Elbert ("Suit 2"), based on the same alleged conduct that gave rise to Suit 1. Once again, the suit was filed against the individuals in their capacities as officers and directors. B&R continued to represent all defendants in Suit 2 – asserting that Suit 2 was barred by the mutual releases in Suit 1. On April 2, 1999, B&R filed a motion for summary judgment based on that defense. On April 21, 1999, the plaintiffs moved to disqualify B&R in Suit 2 because B&R was representing INI as well as the individual directors in what was essentially a shareholder derivative suit – where INI was a nominal plaintiff and any recovery against INI or the individual defendants would be paid to INI. The very same day, B&R sent conflict of interest disclosures and consent forms to each defendant, all of which were subsequently signed. Also, in a June 2, 1999 meeting of INI's Board of Directors, Glick requested that INI retain new legal counsel independent of the then-current litigation, and that motion was seconded by Lohff. After a general discussion

---

[2]     Only the signed consent of Letsche was submitted as an exhibit.

the motion failed. Nevertheless, on June 17, 1999, B&R filed, and was granted, a motion to withdraw as counsel for INI in Suit 2; however, B&R continued to represent the individual defendants in Suit 2, and continued representing all defendants – including INI – in Suit 1. INI's new counsel joined in the motion for summary judgment filed by B&R. On March 14, 2000, the Iowa District Court granted the defendants' motion for summary judgment, finding that Suit 2 was barred by the mutual releases in Suit 1. The plaintiffs appealed this decision on May 1, 2000.

Subsequently, to settle both lawsuits, Glick, Lohff, and Walden entered into separate settlement agreements, which were intended to supercede all prior oral or written agreements – including the mutual releases in Suit 1. The settlement agreements provided that Bennett, Letsche, and Elbert were released from all liability, they were not obligated to pay anything, and they did not admit to any wrongdoing. INI, however, promised to pay Glick $225,000.00 for his shares of stock plus interest, and to pay expenses totaling $67,500.00. Lohff and Walden later entered into similar agreements with INI.

Unfortunately, INI could not meet its obligations and Glick instituted suit to recover the amounts due him. INI confessed judgment on March 22, 2001. On June 29, 2001, INI filed its petition for relief under Chapter 11 of the Bankruptcy Code in the Northern District of Iowa.

In the bankruptcy proceeding, Glick, who controlled On-Line Services, Ltd., LLC, ("OLS") as an 85% owner, submitted a competing Chapter 11 plan of reorganization which called for payment of all allowed claims in full, with interest, within a relatively short period of time after confirmation. OLS's plan was confirmed by the bankruptcy court on January 22, 2003, over the plan submitted by INI. After OLS took over INI's operations, it paid all allowed claims except that of B&R. It

refused to pay the attorney's fees of B&R that were incurred by INI in defending Suits 1 and 2 against Glick and the other plaintiffs.[3]

## III. DISCUSSION

OLS's argument that it should not have to pay B&R's legal fees falls into five separate categories, only two of which are relevant to this appeal.[4]  First, OLS contends that the fees of officers and directors may only be paid if the officers and directors were "wholly successful" in the underlying litigation, and OLS argues that the defendants did not meet that requirement because INI incurred liability.  Second, OLS contends that B&R's representation constituted a conflict of interest and any fees should be disgorged as such representation is contrary to Iowa law.

### A. Mandatory Indemnification

The bankruptcy court determined that B&R's fees were payable pursuant to the mandatory indemnification provision in the Iowa Code.  The section that was applicable during the pendency of the state court litigation provided:

---

[3]    OLS does not contest roughly $26,000.00 in attorney's fees owed B&R for its general corporate representation of INI outside of Suits 1 and 2.  OLS is only contesting $182,022.00 of attorney's fees incurred by B&R in defending Suits 1 and 2.

[4]    The three arguments asserted by OLS that are not addressed in this opinion are permissive indemnification, by-law indemnification and breach of contract.  The bankruptcy court found in favor of OLS based on permissive and by-law indemnification.  Also, OLS's breach of contract claims arose out of the *ipso facto* clause used in the mutual releases in Suit 1 which were superceded by the settlement agreement in Suit 2, which did not contain a similar type clause.

Unless limited by its articles of incorporation, a corporation shall indemnify a director who was wholly successful, on the merits or otherwise, in the defense of any proceeding to which the director was a party because the director is or was a director of the corporation against reasonable expenses incurred by the director in connection with the proceeding.

Iowa Code § 490.852 (1989).

Thus, to be entitled to mandatory indemnification, a director must be "wholly successful, on the merits *or otherwise,*" in the underlying litigation. The emphasized language indicates that Iowa chose a less restrictive standard for director indemnification than that required by other states. *Cf.* VA Code Ann. § 13.1-698 (requiring that only a director who "entirely prevails in the defense" is entitled to mandatory indemnification). An individual incurs "liability" – and is thus not entitled to mandatory indemnification – when the individual is obligated "to pay a judgment, settlement, penalty, fine ... or reasonable expenses incurred with respect to a proceeding." Model Business Corporations Act ("MBCA") § 8.50(5). In fact, the official comments to MBCA § 8.52 provide:

A defendant is "wholly successful" only if the entire proceeding is disposed of on a basis which does not involve a finding of liability....
The language in earlier versions of the Model Act and in many other state statutes that the basis of success may be "on the merits or otherwise" is retained. While this standard may result in an occasional defendant becoming entitled to indemnification because of procedural defenses not related to the merits, e.g., the statute of limitations or disqualification of the plaintiff, it is unreasonable to require a defendant with a valid procedural defense to undergo a possibly prolonged and expensive trial on the merits in order to establish eligibility for mandatory indemnification.

MBCA § 8.52, Official Comment.

6

OLS argues that the individual defendants in this case were not "wholly successful" because INI was obligated to the plaintiffs in Suit 1, and INI was the party to sign the settlement agreements which finally ended Suit 2. OLS argues that because the individual defendants constituted the principal parties of INI, its liability should be imputed to the individuals. Without alleging that INI was an alter ego, or that the defendants had pierced the corporate veil, OLS asserts that INI simply had no meaningful existence without the actions of the individual defendants.

The fundamental nature of corporate existence refutes OLS's argument. A corporation is a distinct entity, separate from its individual members, and the individual members – under ordinary circumstances –  bear no personal liability for the acts of the corporation. *Haupt v. Miller*, 514 N.W.2d 905, 909 (Iowa 1994) (stating that "[t]he legal fiction of the corporation as an independent entity – and the special benefit of limited liability permitted thereby – is intended to insulate stockholders from personal liability for corporate acts and to insulate officers from liability for corporate contracts."). In essence, OLS is arguing that the individual defendants should bear personal liability for B&R's legal fees because there is no separation between the acts of the individual defendants and the acts of INI.

Regardless of OLS's attempt to impose personal responsibility on the directors and officers of INI for actions taken by INI, the individual directors were "wholly successful" in their underlying defense of Suits 1 and 2 because they never incurred any personal liability. The requirement that a director or officer be "wholly successful" before obtaining entitlement to mandatory indemnification was added to § 8.52 of the Revised Model Act to avoid the argument accepted by earlier courts that a defendant may be entitled to partial mandatory indemnification. MBCA § 8.52, Official Comment. *See also Lussier v. Mau-Van Development Inc.*, 667 P.2d 830, 834 (Haw. Ct. App. 1983) (finding that "wholly successful means completely successful as contrasted to partially successful.").

7

Although there are no Iowa cases on point defining the meaning of "wholly successful" as used in § 490.852, cases from other jurisdictions interpreting the same language indicate that a litigant is wholly successful as long as that individual did not incur any personal liability. *See, e.g.*, *Sherman v. American Water Heater Co.*, 50 S.W.3d 455, 461 (Tenn. Ct. App. 2001) (finding that a party that obtained dismissal through a settlement agreement without incurring any personal liability was "wholly successful"), *app. denied*, 2001 Tenn. LEXIS 544 (Tenn. 2001); *Waskel v. Guaranty National Corp.*, 23 P.3d 1214, 1219-22 (Colo. Ct. App. 2000) (allowing mandatory indemnification in a suit against officers, directors, and employees of a corporation for alleged breaches of duties to that corporation when the individual did not incur any personal liability), *cert. denied*, 2001 Colo. LEXIS 396 (Colo. 2001); *Damerow Ford Co. v. Bradshaw*, 876 P.2d 788, 798 (Or. Ct. App. 1994) (allowing mandatory indemnification when the claims against the defendant were dismissed even without a finding that the defendant was innocent of the alleged wrongful actions); *Bayliss v. Cernock*, 773 S.W.2d 384, 387 (Tex. Ct. App. 1989) (finding that defendants dismissed from a lawsuit were wholly successful); *Sabre Farms, Inc. v. Jordan*, 717 P.2d 156, 159-60, 162 (Or. Ct. App. 1986) (affirming an award of attorney fees to the defendants who prevailed, in part, because of laches); *Giulietti v. Giulietti*, 1999 Conn. Super. LEXIS 3416 (Conn. Super. Ct. 1999) (finding that a director was wholly successful when the opposing party withdrew a counterclaim).

A finding of good faith is not a prerequisite to the "wholly successful" inquiry. *See, e.g., Waltuch v. Conticommodity Services, Inc.*, 88 F.3d 87, 96 (2d Cir. 1996) (stating that "success" does not mean moral exoneration, but it does encompass escape from an adverse judgment for whatever reason); *Landmark Land Co. v. Cone*, 76 F.3d 553, 566 (4th Cir. 1996) (finding that bank officers who were investigated for violating banking laws but not formally charged were entitled to mandatory indemnification under Louisiana law, even though they did not act in good faith), *cert. denied*, 519 U.S. 813, 117 S. Ct. 59, 136 L. Ed. 2d 22 (1996); *Safeway Stores, Inc. v. National Union Fire Insurance Co.*, 64 F.3d 1282, 1290 (9th Cir. 1995)

(holding that directors who admitted no liability and paid no money as part of a class action suit settlement were "successful" and thus entitled to indemnification under Maryland law); *Fleischer v. Federal Deposit Insurance Corp.*, 1998 U.S. Dist. LEXIS 9821 (D. Kan. 1998) (stating that parties who prevailed on all claims against them in a directors and officers lawsuit did not need to show that they acted in good faith in order to qualify for mandatory indemnification); *B & B Investment Club v. Kleinert's, Inc.*, 472 F. Supp. 787, 791 (E.D. Pa. 1979) (finding that a director who paid no money as part of a settlement for securities fraud claims was "successful" and thus entitled to mandatory indemnification). *Contra Quark, Inc. v. Harley*, 1998 U.S. App. LEXIS 3864 at *17-18 (10th Cir. 1998) (unpub.) (finding under Colorado law that a director was not wholly successful when a jury determined he breached his fiduciary duties as a director but did not award any damages).

Accordingly, in the absence of any piercing of the corporate veil, the individual defendants were wholly successful on the merits or otherwise in the litigation initiated by the plaintiffs in Suits 1 and 2 because they incurred no personal liability, and this Court is unwilling on this record to capsize the fundamental bulwark of corporate law that the corporate entity is separate and distinct from its individual members.

**B. Disgorgement of Fees Based on Conflict of Interest**

Irrespective of the fact that the defendants represented by B&R were "wholly successful," and thus entitled to mandatory indemnification, OLS contends that Iowa law bars recovery of attorney's fees when counsel's representation contravenes a competing interest. Specifically, OLS asserts that INI and the individual defendants should have had separate counsel because Suits 1 and 2 were, in essence, derivative actions. In a derivative action, the corporation – a named defendant – is also the nominal plaintiff; thus, OLS contends that B&R should not represent multiple parties when one of those parties is on both sides of the lawsuit. Rather than seeking to

retroactively disqualify B&R from representation, OLS merely seeks to erase its obligation to pay B&R's fees based on equitable principles stemming from competing ethical axioms concerning conflicts of interest.

B&R contends that Bennett, as president, had the authority to hire B&R to represent INI in corporate litigation matters. All members of the Board of Directors were aware that B&R was providing representation to both INI and the individual defendants. Additionally, when two of the plaintiffs/directors complained about B&R's representation of INI, the majority of the Board of Directors approved B&R's continued retention. Contrary to OLS's characterization, B&R categorizes Suit 1 as a dissenter's rights action and not a derivative suit; thus, there is no basis for denying fees for work done in Suit 1. Furthermore, B&R withdrew from representing INI in Suit 2 and only continued to represent the individual defendants.

The Iowa Code of Professional Responsibility specifically details the ethical considerations inherent in dual representation:

> (B) A lawyer shall decline proffered employment if the exercise of independent professional judgment on behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, except to the extent permitted under DR 5–105(D).
> ....
> (D) [A] lawyer may represent multiple clients if it is obvious that the lawyer can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of the lawyer's independent professional judgment on behalf of each.

Iowa Code of Professional Responsibility, Canon 5, Disciplinary Rule 5-105.

The fact that B&R's representation of INI and the individual defendants created a potential conflict of interest is apparent. Courts have refused to award

attorney's fees when an attorney violates a conflict of interest rule. *See, e.g., Woods v. City National Bank & Trust Co.*, 312 U.S. 262, 268, 61 S. Ct. 493, 497, 85 L. Ed. 820 (1941) (recognizing the inherent discretionary power of a reorganization court to disallow compensation for services and expenses on the grounds of conflict of interest); *In re Michaelson*, 511 F.2d 882, 888 (9th Cir.1975) (stating that the court has authority to inquire into fee arrangements to protect clients from excessive fees and suspected conflicts of interest), *cert. denied*, 421 U.S. 978, 95 S. Ct. 1979, 44 L. Ed. 2d 469 (1975); *Farmington Dowel Products Co. v. Forster Manufacturing Co.*, 421 F.2d 61, 90-91 (1st Cir. 1970) (finding that the court has the inherent power of supervision over the bar to examine the attorney's fee for conformance with the reasonable standards of the Code of Ethics); *Chicago & West Towns Railways, Inc. v. Friedman*, 230 F.2d 364, 368-69 (7th Cir. 1956) (reducing the district court's award from $12,000.00 to $7,000.00 in fees due to the law firm's involvement in a clear conflict of interest between buyer and seller), *cert. denied*, 351 U.S. 943, 76 S. Ct. 837, 100 L. Ed. 1469 (1956).

The facts presented in this case do not warrant reversal of the bankruptcy court's equitable determination that B&R is entitled to attorney's fees for several reasons.

First, the individual defendants were "wholly successful" in Suits 1 and 2, and are entitled to mandatory indemnification under Iowa Stat. § 490.852. Second, testimony elicited at trial was conflicting over whether B&R initially discussed the dangers of multiple representation at the beginning of their representation with the individual defendants. Glick and Lohff, both plaintiffs/directors, testified that B&R never discussed potential conflicts. Letsche, a defendant/director, did not recall ever hearing such a conversation, but Letsche signed a consent to representation form on November 16, 1998, in which the potential conflict of interest was disclosed. Michael Bell, a director of INI who was not involved in the litigation, testified that he attended a meeting where B&R disclosed potential conflicts of interest and that

Glick was late for that meeting. Bennett testified that B&R discussed the conflicts issue with him at an initial meeting shortly after the plaintiffs filed Suit 1. Brad Hart, an attorney with B&R, testified that he could not remember presenting conflict of interest issues to a meeting of the Board of Directors. Because the only disinterested director, Bell, acknowledged that B&R disclosed the potential conflict of interest in representing multiple parties, because Bennett testified that such a discussion took place, and because Letsche signed a consent to representation form after being told about the potential conflict, we find that the bankruptcy court did not abuse its discretion in determining that B&R adequately disclosed the potential conflict of interest to its clients and that the clients consented to the representation.[5]

Third, OLS, as the successor to INI, is contractually obligated to pay the fees of B&R. The apparent inequity in this case is not in B&R's multiple representation; rather, the inequity is that OLS is seeking to deny attorney's fees rightfully incurred pursuant to an employment contract to defend the officers and directors of its predecessor. Pursuant to 11 U.S.C. § 502(b), when a party objects to a claim, "the court shall allow such claim ... except to the extent that – (1) such claim is unenforceable against the debtor ...." Here, B&R's claim for attorney's fees is contractually enforceable against INI and it is an allowed claim under § 502(b). There is no evidence that INI would have had a basis for refusing to pay the attorney's fees. OLS assumed liability for that claim under its competing plan, and because INI did not have a basis to deny B&R's claim, OLS likewise may not deny payment of the claim.

Fourth, Suit 1, which alleged bad acts by the defendant officers and directors, was re-characterized shortly after filing as a dissenter's rights action. All of the

---

[5] B&R also asserts that it was representing a majority of the Board of Directors and a majority of the stockholders; thus, any vote on whether to retain B&R as counsel would have been a vain act.

Defendants, except INI, were released from liability and B&R continued to only represent INI in the valuation of the plaintiffs' stock. Thus, the potential conflict of interest in Suit 1 was never realized. Additionally, Suit 2 – which was essentially a derivative action – alleged the same core of operative facts that gave rise to Suit 1 and those causes of action were extinguished by the subsequent mutual releases. Although the basic nature of a derivative suit generally prohibits multiple representation of both the directors and the corporation, B&R had a simple defense, ultimately successful, that any further action was barred by the mutual releases in Suit 1. An assertion of this defense, common to all defendants, was not likely to create a conflict of interest. Finally, B&R withdrew from representation of INI in Suit 2 when requested to do so by the court.

In summary, we find that the bankruptcy court did not abuse its discretion in ordering the payment of B&R's attorney's fees because the defendants are entitled to mandatory indemnification; B&R fully disclosed the potential conflict of interest inherent in multiple representation to the defendants and the defendants waived any conflict of interest; OLS, as successor to INI, is contractually obligated to pay the attorney's fees of B&R; the potential conflict of interest never came to fruition in Suit 1; and when the conflict of interest specter appeared in Suit 2, B&R timely withdrew even though the defense of satisfaction applied equally to all defendants.

Accordingly, we affirm the decision of the bankruptcy court.

A true copy.

Attest:

CLERK, U.S. BANKRUPTCY APPELLATE PANEL
FOR THE EIGHTH CIRCUIT

13